## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

## NORTHERN DIVISION

| | |
|---|---|
| Karen Smiley, on behalf of herself and all others similarly situated, | CIVIL ACTION NO. |
| Plaintiff, | **COMPLAINT – CLASS ACTION** |
| v. | |
| ARIZONA BEVERAGES USA LLC, Defendant. | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Karen Smiley brings this action on behalf of herself and all others similarly situated against Defendant Arizona Beverages USA LLC ( "Arizona" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This case arises from Defendant's deceptive and misleading practices with respect to its marketing and sale of its sour fruit snack products (the "Product" or "Products").

1

2.      Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign focused on claims that appeal to health-conscious consumers – specifically the lack of preservatives in the Products.

3.      Defendant engages in a deceptive marketing campaign to convince consumers that the Products contain no preservatives in the marketing[1] and on the labeling[2] of the Products.

4.      Notably, the Product prominently states, "NO PRESERVATIVES" on the front and back:



---

[1] Variants of the words "marketing," and "market" refer to all forms of advertising in all forms of media, including but not limited to print advertisements, television, and radio commercials, Products' labels, viral marketing, incentives, and websites.

[2] The term "labeling" encompasses other descriptive terms, including various forms of the words: labels, labeling, packages, and packaging.

5.      The deception lies in the fact that the Products contain preservatives.

6.      Thus, although Defendant markets the Products as being preservative-free, they contain multiple preservatives.

7.      Reasonable consumers purchased the Products believing, among other things, that they were accurately represented. Specifically, reasonable consumers believed that the Products were free of preservatives. Reasonable consumers would not have purchased the Products if they had known about the misrepresentations and omissions, or would have purchased them on different terms.

8.      Defendant violated the trust of Plaintiff and Class Members because the Products are not the preservative-free snack that Defendant's marketing and labeling represents.

9.      Relying on Defendant's representations, consumers that seek preservative-free snacks only later realize that their purchase of Defendant's Products was a fruitless endeavor

10.     Plaintiff brings this action individually and on behalf of those similarly situated and seek to represent a Nationwide Class and a Maryland Class. Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits that Defendant has enjoyed from its deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendant's deceptive conduct in the labeling and marketing of the Products.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over Defendant. Defendant purposefully avail itself of the Maryland consumer market and distribute the Products to many locations within this District and hundreds of retail locations throughout the State of Maryland, where the Products are purchased by hundreds of consumers every day.

12.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

13.     Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff's purchases of Defendant's Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District.

## PARTIES

14.     Plaintiff is a citizen of Maryland.

   a. Prior to her purchase, Plaintiff saw and relied on Defendant's marketing and labeling representing that the Products contained no preservatives.

b. Plaintiff wished to purchase the fruit snacks for personal consumption. When Plaintiff saw Defendant's misrepresentations prior to and at the time of purchase, she relied on Defendant's prominent representations and claims about the Products. Specifically, that it contained no preservatives.

c. Plaintiff relied on the Defendant's representations, including but not limited to, that the Products contain "NO PRESERVATIVES."

d. Plaintiff understood these representations to mean that the Products were preservative-free. Had Plaintiff known the truth – that the Products contained preservatives – Plaintiff would not have purchased the Products at a premium price. If Defendant removed preservatives, or the Products were no longer deceptively labeled, Plaintiff would purchase the Products again in the future. Plaintiff brings the claims below seeking damages, actual and statutory, as well as injunctive relief.

e. Plaintiff has purchased the Products on multiple occasions. Plaintiff's most recent purchase of the Products occurred in Fall 2022, when she purchased the Product from a Big Lots store located in Wicomico County, Maryland.

15.   Defendant Arizona Beverages USA LLC is a New York company with its principal place of business in Woodbury, NY.

a. In committing the wrongful acts alleged herein, Defendant, in connection with their subsidiaries, affiliates, and/or other related entities and their employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and Defendant participated in the making of such representations in that it disseminated those misrepresentations or caused them to be disseminated.

16.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who have knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## SUBSTANTIVE ALLEGATIONS

### A. Defendant deceives consumers by misrepresenting that the Products are preservative-free.

17.     Consumers increasingly and consciously seek out healthy foods and snacks— placing value on healthy fruit snacks that are preservative-free. Consumers seek these types of snacks for various reasons, including perceived benefits of avoiding disease, and attaining health and wellness for themselves and their children and families.

18.     As a result, consumers are willing to pay, and have paid, a premium for products that are preservative-free over products that contain preservatives.

19.     Companies such as the Defendant capitalize on the consumer's demand for preservative-free snacks and generate increased unit sales, revenue, and profit by making preservative-free representations.

20.     Further, consumers rely on label representations and information in making purchasing decisions.

21.     Knowing this, Defendant prominently features preservative-free statements throughout its packaging.

22.     Notably, the Product's principal display panel prominently states, "NO PRESERVATIVES."

 

23.     The back of the Product additionally states, "NO PRESERVATIVES"





24.    This leads consumers to believe that the Product lacks preservatives.

25.    Based on the representations that appear in the marketing and on the packaging of the Products, Plaintiff reasonably believed that the Products were preservative-free.

26.    However, the Product contains numerous preservatives including Citric Acid, Ascorbic Acid, Lactic Acid, and Fumaric Acid:

8

**INGREDIENTS** ▲

FRUIT JUICE AND PUREES FROM
CONCENTRATE (PEAR, WHITE
GRAPE, WATERMELON, LEMON,
MANGO), SUGAR, CORN SYRUP,
MODIFIED CORNSTARCH,
GELATIN, FUMARIC ACID,
DEXTROSE, LACTIC ACID,
CALCIUM LACTATE, CITRIC ACID,
ASCORBIC ACID (VITAMIN C),
NATURAL FLAVORS, CARROT
JUICE (COLOR), BETA CAROTENE
(COLOR), PAPRIKA OLEORESIN
(COLOR), BLUEBERRY JUICE
(COLOR).

**B. Citric Acid Acts as a Preservative in the Products.**

27.     The FDA classifies and identifies citric acid as a preservative in its
Overview of Food Ingredients, Additives, and Colors, on the FDA's website and
provides examples of uses of preservatives like citric acid.[3]

28.     Citric acid's classification as a preservative is further confirmed by a
Warning Letter sent by the FDA to the manufacturer of Chiquita brand "Pineapple
Bites with Coconut" and "Pineapple Bites," in which the FDA proclaimed the
"Pineapple Bites" and "Pineapple Bites with Coconut" products are further
misbranded within the meaning of Section 403(k) of the Act [21 U.S.C. 343(k)] in
that they contain the chemical preservative ascorbic acid and citric acid but their

---

[3] *See* FDA website,
https://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/
ucm094211.htm.

labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[4]

29.     Citric acid acts as a preservative in the Product regardless of the subjective purpose or intent for why Defendant added citric acid to the Product, including, as a flavoring agent.

30.     Even if citric acid can be used as a flavoring agent in the Product, a greater amount of citric acid is needed to act as a flavoring agent than to preserve the Product because citric acid acts as a preservative even if very low levels are contained in the Product.[5]

31.     The quantity of citric acid therefore needed to affect the flavor of the Product is more than sufficient to function as a preservative. Accordingly, Defendant's purported intent to use citric acid for flavoring has no bearing on the actual function of citric acid as a preservative.

32.     Citric acid functions as a preservative by serving as an acidulant and as an indirect antioxidant, by infiltrating and then weakening or killing microorganisms through direct antimicrobial effect lowering their pH-level and

---

[4] *See* Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc., Archived FDA Warning Letters (2005-2012), https://web.archive.org/web/20211128074142/https://www.fdalabelcompliance.com/letters/ucm2 28663.

[5] *See* Doores, S., Organic acids. In: Davidson, P.M., Branen, A.L. (Eds.), *Antimicrobials in Foods*. Marcel Dekker, Inc., New York, pp. 95-136. http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf.

thereby combatting microorganisms, and through sequestration. Citric acid serves these functions regardless of whether they are also being used as flavorants.[6]

33.     Citric acid still acts as a preservative even if it was intended to be used for another purpose. Food and beverage manufacturers, like Defendant, seek to provide consumers with products that are palatable within a given shelf life. To help ensure this, manufacturers impose many hurdles to degradation when formulating a product. Therefore, if an ingredient has a preservative effect, like citric acid, it is considered a preservative because it acts as a hurdle to food degradation regardless of whether it was added to the Product for other reasons.[7]

### C. Ascorbic Acid Acts as a Preservative in the Products.

34.     The FDA classifies and identifies ascorbic acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like ascorbic acid.[8]

35.     Ascorbic acid's classification as a preservative is further confirmed by a Warning Letter sent by the FDA to Chiquita Brands International, Inc., indicating

---

[6] *See* Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." *Principles of food chemistry*. AVI Publishing Co., Inc., 1999, p. 438.
[7] *See* Biesta-Peters, E., et al. *Comparing Nonsynergistic Gamma Models with Interaction Models To Predict Growth Of Emetic Bacillus Cereus When Using Combinations Of Ph And Individual Undissociated Acids As Growth-Limiting Factors*, APPLIED AND ENVIRONMENTAL MICROBIOLOGY, AMERICAN SOCIETY FOR MICROBIOLOGY, (2010), https://aem.asm.org/content/aem/76/17/5791.full.pdf.
[8] International Food Information Council and U.S. Food and Drug Administration, *Overview of Food Ingredients, Additives & Colors*, FDA, https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors.

that their "products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 C.F.R. 101.22."[9]

36.     Ascorbic acid acts as a preservative in the Products regardless of the subjective purpose or intent for why Defendant added ascorbic acid to the Products, including as a flavoring agent.

**D. Lactic Acid Acts as a Preservative in the Products.**

37.     Lactic acid is a preservative. In fact, it is "is one of the oldest forms of food biopreservation."[10]

38.     Lactic acid acts as a preservative in the Products regardless of the subjective purpose or intent for why Defendant added lactic acid to the Products.

**E.  Fumaric Acid Acts as a Preservative in the Products.**

39.     Fumaric acid is a preservative.[11]

40.     Fumaric acid acts as a preservative in the Products regardless of the subjective purpose or intent for why Defendant added fumaric acid to the Products.

---

[9] Food and Drug Administration, *Fresh Express Incorporated 10/6/10*, ARCHIVED FDA WARNING LETTERS (Oct. 6, 2010), https://www.fdalabelcompliance.com/letters/ucm228663.
[10] Zapaśnik, Agnieszka *et al.*, *Role of Lactic Acid Bacteria in Food Preservation and Safety*, FOODS, vol. 11,9 1283. 28 Apr. 2022.
[11] European Food Safety Authority, *Scientific Opinion on the safety and efficacy of fumaric acid as a feed additive for all animal species*, EFSA Journal 2013;11(2):3102; Justin Comes, *Addition of fumaric acid and sodium benzoate as an alternative method to achieve a 5-log reduction of Escherichia coli O157:H7 populations in apple cider*, J FOOD PROT. 2002;65(3):476-483.

**F.  The Products are misbranded.**

41.      Under FDCA section 403, a food is "misbranded" if "its labeling is false or misleading in any particular." *See* 21 U.S.C. §§ 343(a).

42.      The presence of preservatives in the Products has a material bearing on price and consumer acceptance.

43.      Defendant's Products contain preservatives.

44.      Because the Defendant fails to reveal the basic nature and characterizing properties of the Products (specifically, the presence of preservatives), Defendant's Products are not only sold with misleading labeling but also misbranded under Sections 403(a) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised, distributed, or sold in the U.S. as it is currently labeled. *See* 21 U.S.C. § 331.

45.      Moreover, Maryland law forbids the misbranding of food in language largely identical to that found in the FDCA. *See* Md. Code Ann., Health-Gen. § 21-210 ("Its labeling or packaging is false or misleading in any way.").

46.      By misrepresenting the basic nature and characterizing properties of the Products, Defendant violates these federal and state regulations and mislead Plaintiff and consumers alike.

**G. Defendant Deceives Consumers for Financial Gain.**

47.      By representing the Product has "No Preservatives," Defendant seeks to capitalize on consumers' preference for less processed products with no

preservatives. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health…84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[12]

48.     Consumers are also willing to pay more for the Product with "no preservatives" because of the perceived higher quality, health and safety benefits associated with preservative-free foods. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 80 percent of Americans are willing to pay more for healthier foods.[13] This, coupled with the fact that global sales of healthy food products reached $1 trillion in 2017, according to Euromonitor,

---

[12] *See*, *Free-From Food Trends - US - May 2015,* Mintel: World's Leading Market Intelligence Agency, http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-fromfoods-because-they-believe-them-to-be-more-natural-or-less-processed.

[13] *See We Are What We Eat: Healthy Eating Trends Around the World*, Nielson (Jan. 2015), https://web.archive.org/web/20150421053626/https://www.nielsen.com/content/dam/nielsenglob al/eu/nielseninsights/pdfs/Nielsen%20Global%20Health%20and%20Wellness%20Re port%20- %20January%202015.pdf.

means consumers are eager and willing to pay more for food advertised and labeled as having "No Preservatives" like the Product.[14]

49.     Defendant's practice of capitalizing on consumers' preferences for healthier products is false and deceptive. This deception continues today, as consumers continue to purchase the Product under the mistaken belief that it is preservative-free based on Defendant's false, deceptive, and misleading labeling and advertising of the Product as having "No Preservatives."

50.     Defendant's conduct threatens consumers by using intentionally deceptive and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition and has a negative impact on the marketplace, and reduces consumer choice.

51.     There is no practical reason for false labeling and advertising of the Product, other than to mislead consumers as to the presence of preservatives in the Product while simultaneously providing Defendant with a financial windfall.

### H. Reasonable consumers relied on Defendant's misrepresentations to their detriment.

52.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

---

[14] *See Health and Wellness the Trillion Dollar Industry in 2017: Key Research Highlights, Euromonitor International*, https://web.archive.org/web/20220831234425/https://www.euromonitor.com/article/health-andwellness-the-trillion-dollar-industry-in-2017-key-research-highlights.

53.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

54.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

## I. Defendant's wrongful conduct caused Plaintiff's and the Class Members' injuries.

55.     Defendant knows that consumers are willing to pay more for preservative-free snacks due to the perception that the snacks are higher quality and a healthier alternative to the competition.

56.     As a result of these unfair and deceptive practices, Defendant has likely collected millions of dollars from the sale of the Products that it would not have otherwise earned. Plaintiff and Class Members paid money for fruit snacks that are not what they purported to be or what they bargained for. They paid a premium for the Products when they could have instead bought other, less expensive products that do not purport to be preservative-free.

57.     In making the false and misleading representations described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, a product labeled and advertised as containing "NO PRESERVATIVES."

58.     As an immediate, direct, and proximate result of Defendant's false and misleading representations, Defendant injured the Plaintiff and the Class Members in that they:

16

    a.  Paid a sum of money for Products that were not what Defendant represented;

    b.  Paid a premium price for Products that were not what Defendant represented;

    c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

    d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

    e.  Could not be used for the purpose for which they were purchased; and

    f.  Were of a different quality than what Defendant promised.

59.    Had Defendant not made the false, misleading, and deceptive representations, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

60.    Plaintiff and the Class Members paid for Products that were purported to contain no preservatives but received Products that contained preservatives. The products Plaintiff and the Class Members received were worth less than the products for which they paid.

61.    Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the representations.

62.     Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## CLASS DEFINITIONS AND ALLEGATIONS

63.     Plaintiff, pursuant to Federal Rule of Civil Procedure 23, brings this action on behalf of the following classes (collectively, the "Class," "Classes," and "Class Members"):

a.  Maryland Class: All persons who purchased Defendant's Products within the State of Maryland and within the applicable statute of limitations period; and

b.  Nationwide Class: All persons who purchased Defendant's Products within the United States and within the applicable statute of limitations period.

64.     Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

18

65.     The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, hundreds of thousands of units of the Products to Class Members.

66.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a. whether Defendant misrepresented material facts concerning the Products on the packaging of every product;

b. whether Defendant misrepresented material facts concerning the Products in print and digital marketing of every product;

c. whether Defendant's conduct was unfair and/or deceptive;

d. whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the Class;

e. whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f. whether Defendant breached implied and express warranties to Plaintiff and the Class; and

g. whether Plaintiff and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

67.     Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the preservative-free representations and Plaintiff sustained damages from Defendant's wrongful conduct.

68.     Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions.

69.     Plaintiff has no interests which conflict with those of the Classes.

70.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

71.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the

classes, thereby making appropriate equitable relief with respect to the classes as a whole.

72.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I
### Violation of the Maryland Consumer Protection Act,
### Maryland Code, Commercial Law Article, § 13-101, *et seq.*

73.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.     Plaintiff brings this Count individually and on behalf of the members of the Maryland Class.

75.     This cause of action is brought pursuant to the Maryland Consumer Protection Act ("MCPA"). MD Code Ann. §§ 13-101, *et seq*. The express purpose of the MCPA is to "set certain minimum statewide standards for the protection of consumers across the State" because "consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit. MD Code Ann. §§ 13-102.

76.     Plaintiff is a "consumer" as defined by the MCPA. MD Code Ann. §§
13- 101(c)(1).

77.     Defendant's Products are "consumer goods" and "merchandise" within
the meaning of the MCPA. MD Code Ann. §§ 13-101(d)(1)-(2),(f).

78.     Defendant is a "merchant" engaged in sales, advertising, and
commerce within the meaning of the MCPA. MD Code Ann. §§ 13-101.

79.     The MCPA declares certain actions as unlawful "unfair or deceptive
trade practices." MD Code Ann. §§ 13-102. Defendant's unfair or deceptive trade
practice in violation of the MCPA includes making "[f]alse, falsely disparaging, or
misleading oral or written statement, visual description, or other representation of
any kind which has the capacity, tendency, or effect of deceiving or misleading
consumers"; representing that its "goods and services have a sponsorship, approval,
accessory, characteristic, ingredient, use, benefit, or quantity which they do not
have"; advertising consumer goods without the intent to sell them as advertised;
and engaging in "[d]eception, fraud, false pretense, false premise,
misrepresentation, or knowing concealment, suppression, or omission of any
material fact with the intent that a consumer rely on the same in connection" with
the promotion or sale of its consumer goods and services. MD Code Ann. §§ 13-103.

80.     As set forth above, Defendant's "no preservative" claims are deceptive,
and misleading to consumers because Defendant's Products are not preservative-
free because they contain multiple preservatives.

81.     Plaintiff has standing to pursue this claim because she has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiff would not have purchased Defendant's Products (or paid a premium for them) had she known the truth. As a direct result of Defendant's misrepresentations of material facts, Plaintiff and Maryland Class Members did not obtain the value of the products for which they paid; were induced to make purchases that they otherwise would not have; and lost their ability to make informed and reasoned purchasing decisions.

82.     The damages suffered by Plaintiff and the Maryland Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant as described above.

83.     Plaintiff and the Maryland Class make claims for actual damages, statutory damages, attorney's fees and costs. MD Code Ann. §§ 13-408.

## COUNT II
## Unjust Enrichment

84.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

85.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendant.

86.     At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Classes.

87.     Plaintiff and members of the Classes conferred upon Defendant nongratuitous payments for the Products that they would not have if not for

23

Defendant's deceptive advertising and marketing. Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

88.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## <u>RELIEF DEMANDED</u>

WHEREFORE, Plaintiff, individually and on behalf the Class Members, seeks judgment and relief against Defendant, as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as a

representative for the Classes and Plaintiff's counsel to serve as Class Counsel;

b)   For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c)   For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d)   For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

e)   For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

f)   For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g)   For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all causes of action so triable.

Dated: April 25, 2023

THE KEETON FIRM LLC

/s/ Steffan T. Keeton
Steffan T. Keeton, Esq.
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

*Counsel for Plaintiff and the Proposed Class*