**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

KAREN SMILEY, individually and on behalf of
all others similarly situated,

       Plaintiff,

  v.

ARIZONA BEVERAGES USA, LLC,

       Defendant.

Civil Action No. 1:23-cv-01107-ELH

---

### <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION<br>TO DISMISS COMPLAINT AND/OR TO STAY ACTION</u>

---

STEVENS & LEE
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102
Telephone:  (215) 751-2885
Facsimile:  (610) 988-0805
*Charles.leasure@stevenslee.com*

-and-

669 River Drive, Suite 201
Elmwood Park, New Jersey 07407
Telephone:  (201) 857-6778
Facsimile: (201) 857-6761
*Robert.Donovan@StevensLee.com*

*Attorneys for Defendant,
Arizona Beverages USA LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iii

I.     INTRODUCTION ............................................................................................1

II.    FACTUAL BACKGROUND............................................................................1

III.   SUMMARY OF ARGUMENT .......................................................................3

IV.    LEGAL ARGUMENT.....................................................................................4

       A.    The First-to-File Rule Warrants Dismissal or a Stay of
             Plaintiff's Late-Filed and Duplicative Lawsuit.........................................4

       B.    Plaintiff's Complaint Fails to State Clams Upon Which
             Relief May be Granted ..............................................................................8

             1.    The Express Preemption Provisions of the FDCA
                   Apply to Plaintiff's Claims .............................................................9

                   (a)    The FDA Regulates Preservatives ..................................10

                   (b)    Because Plaintiff Fails to Allege Any FDCA
                          Violation With Regard to Defendant's Labeling,
                          Plaintiff's Claims Are Expressly Preempted ...................11

             2.    By Not Plausibly Alleging Actual or Imminent Future
                   Injury, Plaintiff Lacks Article III Standing to Seek
                   Injunctive Relief............................................................................12

             3.    Plaintiff Fails to State a Claim For Equitable Relief
                   Because Plaintiff Does Not Allege That an Inadequate
                   Remedy at Law Exists ...................................................................13

             4.    The Fraud Claims, Concerning Alleged Preservatives,
                   Are Wholly Conclusory and Lack the Particularity
                   Required Under Rule 9(b)..............................................................14

             5.    The Fraud Claims, Concerning Unidentified Advertising,
                   Print and Digital Marketing, Lack Particularity Required
                   Under Rule 9(b) .............................................................................15

             6.    Plaintiff Fails to State a Claim for Unjust Enrichment
                   Because it is Duplicative of the MCPA ..........................................16

CONCLUSION...........................................................................................................................17

ii

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adams v. Bain*,
   697 F.2d 1213 (4th Cir. 1982) ...............................................................................12

*Adams v. NVR Homes, Inc.*,
   193 F.R.D. 243 (D. Md. 2000) ...............................................................................14

*Ali v. Hogan*,
   496 F. Supp. 3d 917 (D. Md. 2020) ........................................................................12

*Anderson v. Sara Lee Corp.*,
   508 F.3d 181 (4th Cir. 2007) ...................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................8,9

*Bezmenova v. Ocwen Fin. Corp.*,
   2013 WL 1316445 (D. Md. Mar. 27, 2013) ...........................................................14

*Bryant v. Koppers, Inc.*,
   627 F. Supp. 3d 466 (D. Md. 2022) ........................................................................15

*Bryant v. Koppers, Inc.*,
   2023 WL 3053017 (4th Cir. Apr. 24, 2023) ...........................................................14

*C.f. Hartjen v. Cross Medical Products, Inc.*,
   2007 WL 9780544 (D. Md. April 30, 2007) ........................................................6,16

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ..................................................................................................12

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................................................12

*CMH Manufacturing v. Neil*,
   2021 WL 4290634 (D. Md. Sept. 21, 2021) ...........................................................13

*Fisher v. Rite Aid Corp.*,
   2010 WL 2332101 (D. Md. June 8, 2010) ..........................................................4,6,8

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) ...................................................................................9

iii

*Hinton v. Naked Juice Co.*,
    2012 WL 1552873 (D. Md. Apr. 30, 2012) ..........................................................................4,8

*Intellor Grp., Inc. v. Cicero*,
    2019 WL 1643549 (D. Md. Apr. 16, 2019) ..............................................................................4

*Jamison v. Arizona Beverages USA LLC, et al.*,
    (N.D. Cal., Mar. 1, 2023) ................................................................................................1,2,5

*Jones v. Rath Packing Co.*,
    430 U.S. 519 (1977) ..............................................................................................................9

*Laufer v. Naranda Hotels, LLC*,
    60 F.4th 156 (4th Cir. 2023) ...........................................................................................12,13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................................12

*Metague v. Woodbolt Distribution, LLC*,
    2021 WL 2457153 (D. Md. June 16, 2021) .............................................................................9

*POM Wonderful LLC v. Coca-Cola Co.*,
    573 U.S. 102 (2014) ..............................................................................................................9

*Traylor v. Tropicana Products, Inc.*,
    2012 WL 2564817 (D. Md. 2012) ..........................................................................................4

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
    2007 WL 9896432 (D. Md. April 30, 2007) ..........................................................................16

*Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*,
    910 F.3d 1118 (10th Cir. 2018) .............................................................................................5

*Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*,
    431 F. Supp. 3d 698 (D. Md. 2020) .....................................................................................15

*Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*,
    42 F. Supp.3d 1377 (S.D. Cal. Aug. 13, 2014) .......................................................................5

*Zander v. United States*,
    786 F. Supp. 2d 880 (D. Md. 2011) .....................................................................................12

**State Cases**

*State v. Philip Morris Inc.*,
    No. 96122017, 1997 WL 540913 (Md. Cir. Ct. May 21, 1997) .............................................13

iv

**Federal Statutes**

21 U.S.C. 343(k) ...............................................................................................6,10

21 U.S.C. § 343-1(a)(3) ......................................................................... *passim*

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343, *et seq.* ......................................... *passim*

**State Statutes**

Maryland Consumer Protection Act ...................................................................13,14,16

**Rules**

Rule 9(b) ............................................................................................... *passim*

Rule 12(b)(1)..............................................................................................1,12

Rule 12(b)(6)...............................................................................................1,8

**Regulations**

21 C.F.R. 101.22(a)(5)..................................................................................10

21 C.F.R § 100.1(c)(4)....................................................................................10

21 CFR 101.22 ..................................................................................... *passim*

**Constitutional Provisions**

U.S. Const. Article VI, cl. 2............................................................................9

07/21/2023 SL1 1939832v1 115260.00014

**I.      INTRODUCTION**

Defendant, Arizona Beverages USA, LLC's ("Defendant"), submits the within memorandum of law in support of its motion to dismiss the complaint ("Complaint" or "Compl.") filed by plaintiff, Karen Smiley ("Plaintiff"), and/or otherwise to stay this action, pursuant to the first-to-file rule, as well as under Federal Rule of Civil Procedure 12(b)(1) and 12(b(6).

This action, if allowed to proceed, will be an enormous waste of judicial resources by requiring duplicative litigations to take place on opposite sides of the country.  Plaintiff's suit involves substantially the same parties, substantially the same issues and same claims as those asserted in an ongoing, previously filed, putative class action pending in Federal Court in the Northern District of California.  Plaintiff's Complaint concerns the *same line of product* (Defendant's fruit snacks), the *same alleged deceptive practice* (the claim that the product contains a preservative due the presence of citric acid), and covers the *same putative nationwide class* in an action against the *same defendant* as pled in that other action.  To promote judicial efficiency, consistency, and comity, to alleviate the burden on the Courts and parties, and to avoid the real risk of conflicting rulings, just grounds exist for this Court to dismiss or stay this action pursuant to the Fourth Circuit's first-to-file rule.

If the Court is nevertheless inclined to address the merits, dismissal is still warranted for the below explained reasons.

**II.     FACTUAL BACKGROUND**

On March 1, 2023, a putative class action complaint was filed in the Northern District of California against Defendant and Hornell Brewing Co., Inc. ("Hornell").  *See Jamison v. Arizona Beverages USA LLC, et al.*, No. 3:23-cv-00920-VC (N.D. Cal., Mar. 1, 2023) ("*Jamison*" or the "*Jamison Action*").  (*See* accompanying declaration of Robert P. Donovan, "Donovan Dec.," Exhibit A).  That complaint was amended on May 22, 2023.  (*Id.*, Ex. B).  The *Jamison* plaintiff

1

seeks to represent (in addition to a statewide class) a nationwide class of persons who purchased Defendant's "fruit snack products" within the applicable statute of limitations. (*Id.*, ¶¶ 1, 60b). The *Jamison* plaintiff alleges that Defendant's labeling and marketing of the "fruit snack products" as having "NO PRESERVATIVES" is misleading and deceptive because the products contain citric acid. (*See id.*, ¶¶ 1, 24, 28). Fruit snack products are defined to include "Mixed Fruit Fruit [sic] Snacks" depicted in that complaint. (*See id.*, ¶¶ 1, fn.1, and 4).

On April 26, 2023, Plaintiff here filed the present action. (ECF No. 1). Plaintiff seeks to represent (in addition to a statewide class) a nationwide class of persons who purchased Defendant's "sour fruit snack products" (at times, the "Product") within the applicable statute of limitations. (Compl., ¶¶ 1, 63b). Plaintiff claims that Defendant's labeling of the "fruit snack products" as "NO PRESERVATIVES" is misleading and deceptive because the products contain the following ingredients alleged to be preservatives: citric acid, ascorbic acid, lactic acid, and fumaric acid. (*Id.,* ¶¶ 1, 23, 26). Whereas the *Jamison* complaint depicts Defendant's "mixed fruit" flavor of the "fruit snack products," Plaintiff identifies the "sour" flavor package of fruit snacks (i.e. the Product). (*C.f.*, Donovan Dec Ex. B, at ¶ 4; Compl., ¶ 4). Regardless, in both actions, the plaintiffs claim that the labels on Defendants' fruit snacks are deceptive for the same reason: the labels state "No Preservatives" notwithstanding the presence of the same ingredient, citric acid, alleged to be a preservative. (Compare Donovan Dec., Ex. B, ¶¶ 1, 24, 28 with Compl. ¶¶ 1, 23, 26).

Plaintiff here is represented by the Keeton Firm LLC, by and through Steffan Keeton, Esq. While not a signatory to the complaint filed in the *Jamison Action*, that same law firm and same attorney is identified on that pleading as one of the attorneys for the plaintiff in the *Jamison Action* (with an indication that a *pro hac vice* is forthcoming). (Donovan Dec., Ex. B, p. 1 and p. 32).

2

## III.    SUMMARY OF ARGUMENT

The first-to-file rule acts to bar this type of gamesmanship, making a dismissal, or a stay, appropriate.  In the event the Court addresses the merits of Plaintiff's claims, the Complaint fares no better.  Plaintiff fails to state a claim upon which relief can be granted for several reasons including:

(1)   The claims that citric acid, ascorbic acid, lactic acid and fumaric acid are  preservatives are expressly preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343, *et seq.* ("FDCA"), as amended by the Nutrition Labeling and Education Act (Public Law 101-535, 104 Stat. 2352, Nov. 8, 1990) (the "NLEA"), specifically under 21 U.S.C. §343-1(a)(3), which governs the labeling of chemical preservatives.  Pursuant to the FDCA, the United States Food and Drug Administration ("FDA") defines what constitutes a "chemical preservative."   21 C.F.R. § 101.22(a)(5).  However, Plaintiff fails to allege that Defendant violates that regulation or any other provision of the FDCA.  Plaintiff's claims about preservatives are based upon publications, not law, and thereby improperly seek to impose a state law obligation that differs from the requirements of the FDCA, contrary to the express preemption provisions of 21 U.S.C. § 343-1(a)(3);

(2)   Plaintiff lacks Article III standing to seek injunctive relief due the failure to plead facts of a threat of future imminent harm;

(3)   Plaintiff fails to state a claim for equitable relief because there is no allegation of any inadequate remedy at law;

(4)   The consumer fraud claim, about the presence of preservatives and concerning unidentified marketing and/or advertisements, are wholly conclusory and lack the required particularity under Rule 9(b);

(5)   The claim for unjust enrichment is duplicative of the state consumer fraud claim pled.

3

IV.    **LEGAL ARGUMENT**

A.    **The First-to-File Rule Warrants Dismissal or a Stay of Plaintiff's Late-Filed and Duplicative Lawsuit**

"The first-to-file rule 'requires substantially overlapping cases filed in separate fora to be resolved in the forum where the initial case is filed unless a balance of convenience favors the second action.'" *Fisher v. Rite Aid Corp.*, No. CIV.A.RDB-09-1909, 2010 WL 2332101, at *2 (D. Md. June 8, 2010) (citing *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 (4th Cir.1974)). In determining whether to apply the first-to-file rule, most courts consider three non-exhaustive factors: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Intellor Grp., Inc. v. Cicero*, No. CV TDC-19-0010, 2019 WL 1643549, at *3 (D. Md. Apr. 16, 2019) (other citations omitted). Upon making this determination, the court "has discretion to stay, dismiss, or transfer the second-filed action." *Id.* Courts in this district have continuously recognized that the first-to-file rule serves the significant goals of "ensuring judicial efficiency, consistency, and comity," and, as a result, "'should not be disregarded lightly.'" *Fisher*, 2010 WL 2332101, at *2 (quoting *Neuralstem, Inc. v. Stemcells, Inc.*, 573 F.Supp.2d 888, 900 (D.Md.2008)).

Dismissal is appropriate when "'a showing of substantial similarity'" is made. *See Hinton v. Naked Juice Co.,* No. 8:11-CV-03740-AW, 2012 WL 1552873, at *2 (D. Md. Apr. 30, 2012) (citing to 2010 WL 2332101, at *2). "Substantial similarity" does not mean that cases must be identical; "courts need not find a precise overlap." 2010 WL 2332101, at *2; *see also Traylor v. Tropicana Products, Inc.,* 2012 WL 2564817, at *2 (D. Md. 2012) (dismissing duplicative class action lawsuit pursuant to the first-to-file rule). Here, all factors of the first-to-file rule heavily weigh in favor of a dismissal (or a stay) of Plaintiff's action.

4

***First***, there can be no genuine no dispute that *Jamison* is the earlier-filed action.  The determination of chronology is rather simple: "the first court in which jurisdiction attaches has priority to consider the case" and jurisdiction "relates back to the filing of the complaint." *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018) (citations omitted). The *Jamison Action* was commenced on March 1, 2023 in the Northern District of California. (Donovan Dec., Ex. A).  Plaintiff filed the Complaint on April 26, 2023 – nearly two months later. (*See* Compl., ECF 1).  Thus, the first factor, chronology of events, weighs in favor of dismissal.

***Second***, the parties in this action are substantially similar and, in some instances, identical to the parties in the *Jamison Action*.  Here, Plaintiff sues Arizona Beverages USA, LLC – a named defendant in *Jamison*.  (See generally, Compl and Donovan Dec., Ex. B).  The fact that the plaintiff in *Jamison* also sued another defendant, Hornell, does not negate the substantial similarity of the parties. *See, e.g., Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp.3d 1377, 1382 (S.D. Cal. Aug. 13, 2014) (finding parties substantially similar although other defendants were named in second-filed suit but not in first).  Moreover, the classes in both actions overlap.  In both *Jamison* and the present action, plaintiffs seek to represent a nationwide class consisting of "[a]ll persons who purchased Defendant['s] Products within the United States[.]" (Compl., at ¶63(a)-(b); Donovan Dec., Ex. B, at ¶ 60(a)-(b)).  The "fruit snack products" in *Jamison* are stated to include "MIXED FRUIT Fruit [sic] Snacks."  (Donovan Dec., Ex. B, at ¶ 1, and fn. 1). Significantly, the "Products" in the *Jamison Action* are defined in such a way not to exclude other fruit snack products that are substantially similar.  (*Id.*)  Given this broad definition of "Products" in the *Jamison Action*, purchasers of the "Sour Fruit Snacks" Product, like Plaintiff here, are included within the putative class alleged in *Jamison*.  Because of the similarity of the parties in these two actions, the second factor favors dismissal.

5

***Third,*** in terms of the similarity of issues or claims, in both actions, plaintiffs allege that Defendant deceptively marketed the same products: "fruit snack products." (*See* Compl., at ¶ 1; Donovan Dec., Ex. B, at ¶ 1). Each of these actions include claims that "the Product prominently states, 'NO PRESERVATIVES' on the front and back" but contains ingredients, including "citric acid," which both plaintiffs allege to be a preservative. (*C.f.,* Compl., at ¶¶ 4, 22, 26; Donovan Dec. Ex. B, at ¶¶ 4, 28). The same subject matter is at issue in both litigations. Plaintiff's allegations about a different flavor of the "fruit snack products" and adding allegations about other ingredients does not render the first to file rule inapplicable. As stated, the first-to-file rule requires only "substantial similarity," not "precise overlap." *Fisher*, 2010 WL 2332101, at *2.

Further, Plaintiff advances legal claims and asserts allegations that are not only substantially similar, but, in some instances, identical to those asserted in the *Jamison Action*. By way of summary, those allegations include:

| **SMILEY ALLEGATIONS** | **JAMISON ALLEGATIONS** |
|---|---|
| ¶27. The FDA classifies and identifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like citric acid. (Footnote referencing FDA website) | ¶29. Same. [Donovan Dec., Ex. B]. |
| ¶28. Citric acid's classification as a preservative is further confirmed by a Warning Letter sent by the FDA to the manufacturer of Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites," in which the FDA proclaimed the "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of Section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22. [Footnote referencing letter to Chiquita Brands] | ¶30. Same. [*Id.*] |

6

| | |
|---|---|
| ¶29.  Citric acid acts as a preservative in the Product regardless of the subjective purpose or intent for why Defendant added citric acid to the Product, including, as a flavoring agent. | ¶31.  Virtually the same.  [*Id.*]. |
| ¶30.  Even if citric acid can be used as a flavoring agent in the Product, a greater amount of citric acid is needed to act as a flavoring agent than to preserve the Product because citric acid acts as a preservative even if very low levels are contained in the Product. [Footnote referencing "Antimicrobials in Foods" publication] | ¶32.  Same.  [*Id.*]. |
| ¶31.  The quantity of citric acid therefore needed to affect the flavor of the Product is more than sufficient to function as a preservative.  Accordingly, Defendant's purported intent to use citric acid for flavoring has no bearing on the actual function of citric acid as a preservative. | ¶33.  The quantity of citric acid therefore needed to affect the flavor of the Product is more than sufficient to function as a preservative.  [Id.]. |
| ¶32.  Citric acid functions as a preservative by serving as an acidulant and as an indirect antioxidant, by infiltrating and then weakening or killing microorganisms through direct antimicrobial effect lowering their pH-level and thereby combatting microorganisms, and through sequestration. Citric acid serves these functions regardless of whether they are also being used as flavorants.  [Footnote referencing publication, "Principles of Food Chemistry] | ¶34.  Same.  [*Id.*]. |
| ¶33. Citric acid still acts as a preservative even if it was intended to be used for another purpose.  Food and beverage manufacturers, like Defendant, seek to provide consumers with products that are palatable within a given shelf life.  To help ensure this, manufacturers impose many hurdles to degradation, when formulating a product.  Therefore, if an ingredient has a preservative effect, like citric acid, it is considered a preservative because it acts as a hurdle to food degradation regardless of whether it was added to the Product for other reasons.  [Footnote referencing publication, "Applied and Environmental Microbiology"] | ¶35.  Virtually the same.  [*Id.*]. |

7

In both actions, plaintiffs also contend that the same common questions exist. (Compare Compl., ¶ 66a.-g.; with Donovan Dec., Ex. B, at ¶ 63a.-g.). The differences in the causes of action asserted, under separate state laws, do not negate the substantial similarity between the two actions. *See Hinton* , 2012 WL 1552873, at *2. (finding separate lawsuits filed in California overlapped with Maryland action); *see also Fisher*, 2010 WL 2332101, at *2-3 (slight difference between state and federal claims did not prevent application of the first-to-file rule). In both actions here, the plaintiffs seek nationwide class certification based upon the same claim, unjust enrichment. (Compare Compl., ¶¶ 84-88; with Donovan Dec., Ex. B, ¶¶ 139-145). They also both seek injunctive relief. (*Id.*, request for relief, p. 25, ¶ b; Donovan Dec., Ex. B, relief demanded, p. 31, ¶ b).

In sum, because the present action involves the same or substantially similar parties, the same underlying legal and factual issues, substantially similar products, and substantially the same claims, as in the earlier-filed and ongoing *Jamison Action*, dismissal (or a stay) of this action under the first-to-file rule is authorized.

## B.   **Plaintiff's Complaint Fails to State Claims Upon Which Relief May be Granted**

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]" *Iqbal*, 556 U.S. at

8

678.  Moreover, the Court need not accept "legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano* v. *Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted).  Ultimately, in evaluating whether a plaintiff has stated a claim, the Court should draw upon both "its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In the present action, if the Court were to assess the sufficiency of the Complaint, dismissal is warranted for the below stated reasons.

### 1.   The Express Preemption Provisions of the FDCA Apply to Plaintiff's Claims

The doctrine of preemption derives from the Supremacy Clause of the United States Constitution and provides that state laws in conflict with federal law have no force and effect.  *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007); U.S. Const. art. VI, cl. 2. Preemption may be either express or implied.  *See Anderson*, 508 F.3d at 191.  Express preemption occurs when Congress' intent to preempt state law is "explicitly stated in the statute's language." *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).

As observed in *Metague v. Woodbolt Distribution, LLC*, 8:20-cv-02186-PX, 2021 WL 2457153, at *4 (D. Md. June 16, 2021), "[i]n the FDCA, Congress expressly set forth the scope of federal preemption as applied to labeling requirements." (Citing to 21 U.S.C. § 343 *et seq.* (as amended by the NLEA)).  The FDCA, as amended by the NLEA, "forecloses a 'State or political subdivision of a State' from establishing requirements that are of the type but 'not identical to' the requirements in some of the misbranding provisions of the FDCA."  *POM Wonderful LLC v. Coca-Cola Co.,* 573 U.S. 102, 109 (2014) (quoting 21 U.S.C. § 343-1(a)).

The FDCA has express preemption provisions that govern the labeling of a chemical preservative.  *See* 21 U.S.C. § 343-1(a)(3).  That law states, in pertinent part, as follows:

9

"no State . . . may directly or indirectly establish . . . any requirement for the labeling of food of the type required by section . . . 343(k) of this title that is not identical to the requirement of such section . . . .

*Id.*

Title 21, Section 343(k) of the United States Code governs the labeling of, *inter alia*, a

chemical preservative. *See*, 21 U.S.C. § 343(k).

The regulations, in turn, define the phrase "not identical" in the following manner:

"Not identical to" does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that:

(i)     Are not imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act; or

(ii)    Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act.

21 C.F.R § 100.1(c)(4).

(a)     <u>**The FDA Regulates Preservatives**</u>

The FDA's regulations govern what a label must state if there is a preservative in the

product.  In that regard, 21 C.F.R. 101.22(a)(5) states:

The term chemical preservative means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties.

When preservatives are present in a product, 21 CFR 101.22(j) provides:

A food to which a chemical preservative(s) is added shall, except when exempt pursuant § 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative", "to retard spoilage", "a mold inhibitor", "to help protect flavor" or "to promote color retention."

10

**(b)**   **Because Plaintiff Fails to Allege Any FDCA Violation With Regard to Defendants' Labeling, Plaintiff's Claims Are Expressly Preempted**

Plaintiff's claims are expressly preempted because there are no allegations that Defendant violated the FDCA by including "No Preservatives" on their product labels. Plaintiff refers to the FDA website concerning preservatives but does not allege that Defendant's ingredients are preservatives based upon the applicable regulation, i.e. 21 CFR 101.22(j). (Compl, ¶ 27). There are no allegations that any of the ingredients, claimed to be preservatives, act to inhibit mold, help protect flavor or promote color retention in the Product.

As to citric acid, Plaintiff cites to a 2010 warning letter that the FDA sent to Chiquita Brands in 2010 because its product contained citric acid. (*Id.*, ¶ 28). However, Plaintiff does not allege the citric acid in the Product functions in a manner that falls within the definition of "chemical preservative" under the FDA's regulations. Instead, Plaintiff asserts that the citric acid in the Product functions as an acidulant and "indirect antioxidant" that kills microorganisms. (*Id.*, ¶ 32). That is not the standard that qualifies as a preservative under the FDCA.

The claims about ascorbic acid, lactic acid and fumaric acid are also barren of any claim of a violation of the FDCA. Instead of relying upon applicable FDA standards of what constitutes a preservative, Plaintiff refers generically to publications concerning these ingredients. (*Id.*, ¶ 35, fn. 9; ¶ 37, fn. 10; and ¶ 39, fn. 11). One of those publications is foreign being from the "European Food Safety Authority," dated in 2013. (*Id.*, ¶ 39, fn. 11).

Plaintiff also does not allege that the FDCA prohibits Defendant from labeling the Product as having "no preservatives." There is no such restriction under the FDCA. Plaintiff nevertheless seeks to impose such a prohibition here without alleging any that the ingredients at issue constitute preservatives under FDCA laws.

11

Because Plaintiff's claims seek to impose label requirements, with regard to alleged preservatives, that differ from the standards under the FDCA, all Plaintiff's claims in the Complaint are expressly preempted by 21 U.S.C. § 343-1(a)(3).

### 2. By Not Plausibly Alleging Actual or Imminent Future Injury, Plaintiff Lacks Article III Standing to Seek Injunctive Relief

Pursuant to the Federal Rules of Civil Procedure, dismissal should be granted under Rule 12(b)(1) where the moving party shows "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Zander v. United States*, 786 F. Supp. 2d 880, 883 (D. Md. 2011).  This is because "[p]laintiffs bear the burden of proving that subject matter jurisdiction exists," (*Ali v. Hogan*, 496 F. Supp. 3d 917, 922 (D. Md. 2020)), and must prove standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Under Article III's standing requirement for injunctive relief, a plaintiff must allege that a "real or immediate threat" exists that she will be wronged again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); see also *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) ("[W]here injunctive relief is sought, the plaintiff must show a real or immediate threat that she will be wronged again.") (internal quotations omitted).  The "'threatened injury must be certainly impending to constitute injury in fact,' and . . . 'allegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citations omitted).

Plaintiff asserts a conditional willingness to "purchase the Products again in the future" if the ingredients were changed and the labels were removed. *See* Compl., at ¶ 14(d).  Plaintiff is

12

thereby asserting a potential intent to purchase a *different product* – i.e., one with different ingredients or labels. Plaintiff fails to that she will purchase the Product again in the future, as it is currently comprised and labeled, and thus does not sufficiently allege a real or immediate threat of being harmed again. *See Laufer,* 60 F.4th at 161. Dismissal of the claims for injunctive relief is warranted under these circumstances due to the lack of Article III standing.

3.     **Plaintiff Fails To State A Claim For Equitable Relief Because Plaintiff Does Not Allege That An Inadequate Remedy At Law Exists**

In order to obtain equitable remedy in the form of restitution, the claimant must demonstrate a lack of adequate legal remedy. *See State v. Philip Morris Inc.*, No. 96122017, 1997 WL 540913, at *15 (Md. Cir. Ct. May 21, 1997). The "fundamental purpose of equitable jurisdiction" is "to grant relief when, *and only when*, the law courts could not, or would not, render a complete and adequate remedy for the wrong done." *See CMH Manufacturing v. Neil*, No. CV JKB-21-0674, 2021 WL 4290634, at *3 (D. Md. Sept. 21, 2021) (quoting *Manning v. Potomac Elec. Power Co.*, 187 A.2d 468, 472 (Md. 1963)) (emphasis in original).

Here, Plaintiff is suing for violations of the Maryland Consumer Protection Act ("MCPA"), seeking damages, and sues for "compensatory and punitive damages … arising from Defendant's wrongful conduct[.]" (Compl., ¶¶ 82, 83 and at Prayer for Relief ¶(e)). However, Plaintiff also seeks equitable relief in the form of restitution under the theory of unjust enrichment. (*Id.*, ¶ 88 and Prayer for Relief ¶(c)). All of Plaintiff's claims are based upon the same alleged conduct (*Id.*, ¶¶ 75-88) in that Plaintiff alleges financial harm and/or losing money as a result of Defendant's conduct. (*Id.*, ¶¶ 56, 58, 62, 70, and 81).

Plaintiff fails to allege that equitable relief, in the form of restitution, is necessary due to the lack of an adequate remedy at law. This material deficiency in the pleading authorizes dismissal of the claims for equitable relief in the form of restitution.

13

**4.    The Fraud Claims, Concerning Alleged Preservatives, Are Wholly Conclusory And Lack The Particularity Required Under Rule 9(b)**

Claims for unfair or deceptive practices under the MCPA "sound in fraud and are subject to the heightened pleading standards of Rule 9(b)." *Bryant v. Koppers, Inc.*, No. 22-2017, 2023 WL 3053017, at *1 (4th Cir. Apr. 24, 2023) (quotations and citations omitted) (affirming dismissal of deceptive trade practices claim under Rule 9(b)). More broadly, "[t]he requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000). To plead fraud under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For consumer deception claims, a plaintiff must plead the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation. *See Bezmenova v. Ocwen Fin. Corp.*, No. 8:13-CV-00003-AW, 2013 WL 1316445, at *3 (D. Md. Mar. 27, 2013) (granting dismissal for lack of particularity where plaintiff merely alleged "misrepresentations"); *see also Bryant*, 2023 WL 3053017, at *1.

Here, the allegations about citric acid, ascorbic acid, lactic acid and fumaric acid being preservatives in the Product are conclusory and do not explain, in the required detail, why these ingredients function as preservatives in the Product. As to citric acid, Plaintiff asserts that the citric acid acts as preservative in the Product but there is no assertion as to how and why that is the case. (Compl, ¶ 29). The assertions about citric acid being an acidulant and indirect antioxidant are not pled in a way to connect those functions with Defendant's Product. (*Id.*, ¶32). Based upon the heightened standard necessary to plead fraud, some nexus has to be pled about citric acid's alleged status as preservative in general and how that ingredient is used in Defendant's Product.

14

Plaintiff repeats the same conclusory and vague assertion about ascorbic acid, lactic acid and fumaric acid. (*Id.*, ¶¶ 36, 38 and 40-i.e. that those ingredients act "as a preservative in the Products regardless of the subjective purpose or intent for why Defendant added [that ingredient] to the Products, including as a flavoring agent."). That sole, scant and vague allegation can hardly meet the threshold necessary to plead fraud when alleging that preservatives are contained in the Product. Accordingly, the fraud claims based upon the presence of alleged preservatives in the Product fail under Rule 9(b).

### 5.    The Fraud Claims, Concerning Unidentified Advertising, Print and Digital Marketing, Lack Particularity Required Under Rule 9(b)

In addition to labels, Plaintiff claims misrepresentations are present in Defendants' marketing and advertisements. (*See* Compl., ¶¶ 2, 3, 6, 8, 10, 14a, 45, 66b, 86, and 87). One of the alleged common questions claims that "Defendants misrepresented material facts concerning the Products in print and digital marketing of every product." (*Id.*, ¶ 66b). However, Plaintiff does not plead what was stated in these advertisements or in any print and digital marketing statements, nor when and where these statements appeared, nor whether they were even viewed by Plaintiff.

In order to state a claim sounding in fraud based upon these allegedly false marketing, print and digital advertising statements, Rule 9(b) requires Plaintiff to plead these claims with more particularity. *See Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 478 (D. Md. 2022) ("Plaintiffs have failed to satisfy the heightened pleading standard necessary for an allegation of fraud" as the complaint "is devoid of allegations as to the time, place or other circumstances of the allegedly false representation."); *see also Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 713 (D. Md. 2020) (finding that plaintiff provided only the conclusory assertion that it relied on Defendants' misrepresentation without alleging hearing or seeing any of the specific misstatements).

15

Here, because Plaintiff's allegations regarding marketing or advertising statements do not detail when these representations were made or by whom, and do not state whether these statements were ever seen by Plaintiff, dismissal of the fraud claims, based upon those unidentified marketing statements, advertisements, print and digital marketing, is proper under Rule 9(b).

**6.      Plaintiff Fails To State A Claim For Unjust Enrichment Because It Is Duplicative Of The MCPA Claim.**

Generally, when a claim for unjust enrichment is duplicative of other claims, it is subject to dismissal on those grounds. *See Victor Stanley, Inc. v. Creative Pipe, Inc.,* MJG-06-2662, 2007 WL 9896432, at *4 (D. Md. April 30, 2007) (dismissing unjust enrichment claim finding that "[p]laintiff has not pleaded a claim that is not duplicative of other claims and/or preempted."); *C.f. Hartjen v. Cross Medical Products, Inc.,* MJG-06-2938, 2007 WL 9780544, at * 2 (D. Md. April 30, 2007) (denying motion to dismiss <u>quantum meruit</u> claim because it was independent of the unjust enrichment claim but noting that "Plaintiff is not entitled to duplicative recovery on his <u>quantum meruit</u> and unjust enrichment claims.").

In the unjust enrichment count, Plaintiff alleges that "Defendant deceptively marketed, advertised and sold merchandise to Plaintiff and the Classes." (Compl., ¶ 85). Plaintiff also asserts conferring a benefit upon Defendant due to payments that would not have been made "if not for Defendant's deceptive advertising and marketing." (*Id.*, ¶ 86). These same factual allegations form the basis for the claim under the MCPA. (*Id.*, ¶¶ 80-82). The unjust enrichment claim is indeed duplicative of the MCPA claim because it is based upon the same alleged conduct, deceptive labels. Because no independent factual grounds are pled for unjust enrichment, that claim ought to be dismissed as duplicative of the MCPA claim.

16

IV.    **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant Defendant's motion to dismiss the Complaint and/or to stay this action.

Dated:  July 21, 2023              By:    */s/ Charles E. Leasure III*
                                          CHARLES E. LEASURE III

                                          STEVENS & LEE
                                          1500 Market Street
                                          East Tower, Suite 1800
                                          Philadelphia, PA 19102
                                          T: 215-751-2885
                                          F: 610-988-0805
                                          charles.leasure@stevenslee.com

                                          ROBERT P. DONOVAN (admitted *Pro Hac Vice*)
                                          STEVENS & LEE
                                          669 River Drive, Suite 201
                                          Elmwood Park, New Jersey 07407
                                          Telephone:  (201) 857-6778
                                          Facsimile:  (201) 857-6761
                                          Robert.donovan@stevenslee.com

                                          *Attorneys for Defendant,*
                                          *Arizona Beverages USA, LLC*

17