**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| KAREN SMILEY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ARIZONA BEVERAGES USA, LLC,<br><br>    Defendant. | Civil Action No. 1:23-cv-01107-ELH |

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND/OR TO STAY THE ACTION

---

STEVENS & LEE
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102
Telephone:  (215) 751-2885
Facsimile:  (610) 988-0805
*Charles.Leasure@stevenslee.com*
*Christopher.McDonald@stevenslee.com*

-and-

669 River Drive, Suite 201
Elmwood Park, New Jersey 07407
Telephone:  (201) 857-6778
Facsimile:  (201) 857-6761
*Robert.Donovan@stevenslee.com*

*Attorneys for Defendant,
Arizona Beverages USA LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.     INTRODUCTION .................................................................................................1

II.    PROCEDURAL HISTORY OF RELEVANT ACTIONS .....................................2

       A.    Procedural History of Jamison Action .......................................................2

       B.    Procedural History of the Within Action ...................................................2

III.   SUMMARY OF ARGUMENT ............................................................................3

IV.    LEGAL ARGUMENT .........................................................................................4

       A.    The First-to-File Rule Warrants Dismissal or a Stay of
             Plaintiff's Action .......................................................................................3

       B.    By Not Plausibly Alleging Actual or Imminent Future Injury, Plaintiff
             Lacks Article III Standing to Seek Injunctive Relief ...............................10

       C.    Both Counts in the Amended Complaint Sound in Fraud and Lack
             The Particularity Required Under Rule 9(b) ............................................12

       D.    Plaintiff Fails to State Claims Upon Which Relief May be Granted .....................14

             (i)    Plaintiff Fails To State a Claim For Unjust Enrichment Because
                    It Is Duplicative Of The MCPA Claim ........................................15

             (ii)   Plaintiff Fails To State a Claim For Equitable Relief, In The
                    Form of Restitution, Because Plaintiff Does Not Allege That
                    An Inadequate Remedy At Law Exists .........................................15

CONCLUSION ....................................................................................................................16

i

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adams v. Bain*,
    697 F.2d 1213 (4th Cir. 1982) ..............................................................................10

*Ali v. Hogan*,
    496 F. Supp. 3d 917 (D. Md. 2020) .......................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................14

*Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*,
    888 F.3d 696 (4th Cir. 2018) ................................................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................14

*Bryant v. Koppers, Inc.*,
    627 F. Supp. 3d 466 (D. Md. 2022) .......................................................................14

*Butler v. DirectSat USA, LLC*,
    800 F. Supp. 2d 662 (D. Md. 2011) .........................................................................4

*Hartjen v. Cross Medical Products, Inc.*,
    2007 WL 9780544 (D. Md. April 30, 2007)......................................................7,15

*Cadenasso v. Metro. Life Ins. Co.*,
    2014 WL 1510853 (N.D. Cal. Apr. 15, 2014) .....................................................5,6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983).................................................................................................11

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)...............................................................................................11

*CMH Manufacturing v. Neil*,
    2021 WL 4290634 (D. Md. Sept. 21, 2021) ..........................................................16

*Cozzarelli v. Inspire Pharms. Inc.*,
    549 F.3d 618 (4th Cir. 2008) ................................................................................13

*Fisher v. Rite Aid Corp.*,
    2010 WL 2332101 (D. Md. June 8, 2010).......................................................*passim*

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) ...................................................................................14

*U.S. ex rel. Goldstein v. Fabricare Draperies, Inc.*,
   84 F. App'x 341 (4th Cir. 2004) .............................................................................12

*Gonzalez v. Homefix Custom Remodeling Corp.*,
   2023 WL 3115585 (E.D. Va. Apr. 26, 2023) ............................................................5

*Hafkey v. Cohen*,
   2018 WL 11472298 (D. Md. Aug. 21, 2018) .............................................................5

*Hinton v. Naked Juice Co.*,
   2012 WL 1552873 (D. Md. Apr. 30, 2012).........................................................4,5,9

*Intellor Grp., Inc. v. Cicero*,
   2019 WL 1643549 (D. Md. Apr. 16, 2019).........................................................3,4,5

*Jamison v. Arizona Beverages USA LLC, et al.*,
   (N.D. Cal., Mar. 1, 2023)................................................................................ *passim*

*Laufer v. Naranda Hotels, LLC*,
   60 F.4th 156 (4th Cir. 2023) ...................................................................................11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................11

*Metague v. Woodbolt Distribution, LLC*,
   WL 2457153 (D. Md. June 16, 2021)...................................................................11,12

*Neuralstem, Inc. v. Stemcells, Inc.*,
   573 F.Supp.2d 888 (D. Md. 2008).............................................................................4

*Paracha v. Gen. Mills, Inc.*,
   2019 WL 13040495 (C.D. Cal. Jan. 7, 2019) ...........................................................9

*Traylor v. Tropicana Products, Inc.*,
   2012 WL 2564817 (D. Md. 2012) .............................................................................4

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
   2007 WL 9896432 (D. Md. April 30, 2007)............................................................15

*Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*,
   910 F.3d 1118 (10th Cir. 2018) .................................................................................4

*Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*,
   431 F. Supp. 3d 698 (D. Md. 2020)........................................................................14

09/25/2023 SL1 1950949v1 115260.00014

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) .................................................................................................13

*Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*,
   42 F. Supp.3d 1377 (S.D. Cal. Aug. 13, 2014) ........................................................................5

*Zander v. United States*,
   786 F. Supp. 2d 880 (D. Md. 2011) ......................................................................................10

**State Cases**

*Manning v. Potomac Elec. Power Co.*,
   187 A.2d 468 (Md. 1963) .....................................................................................................16

*State v. Philip Morris Inc.*,
   1997 WL 540913 (Md. Cir. Ct. May 21, 1997) ....................................................................15

**Federal Statutes**

21 U.S.C. 343(k) ...........................................................................................................................8

**State Statutes**

Maryland Consumer Protection Act, MD Code Ann. §§ 13-101, *et seq*. .............................. *passim*

**Rules**

Fed. R. Civ. P. ...................................................................................................................3,12,13,14

Fed. R. Civ. P. 12(b)(1) ..........................................................................................................1,3,10

Fed R. Civ. P. 12(b)(6) ...........................................................................................................1,3,14

**Regulations**

21 CFR 101.22 ...........................................................................................................................8,9

09/25/2023 SL1 1950949v1 115260.00014

I.    **INTRODUCTION**

Defendant, Arizona Beverages USA, LLC's (at times, "Defendant" or "ABUSA"), submits the within memorandum of law in support of its motion to dismiss the first amended class action complaint ("Amended Complaint" or "Am. Compl.") filed by plaintiff, Karen Smiley ("Plaintiff"), and/or otherwise to stay this action.

This action is subject to dismissal or a stay, pursuant to the first-to-file rule, because it involves substantially the same parties, substantially the same issues and same claims as those asserted in an ongoing, previously filed, putative nationwide class action pending in Federal Court in the Northern District of California, captioned *Jamison v. Arizona Beverages USA LLC, et al.*, No. 3:23-cv-00920-VC (N.D. Cal., Mar. 1, 2023) ("*Jamison*" or the "*Jamison Action*"). The *Jamison Action* and the within matter concern claims about the *same line of products* (Defendant's fruit snacks), the *same alleged deceptive practice* (the claim that the products contain a preservative due to the presence of citric acid), the *same putative nationwide class* and the *same defendant*. To promote judicial efficiency, consistency, and comity, to alleviate the burden on the Courts and parties, and to avoid the real risk of conflicting rulings, just grounds exist for this Court to dismiss or stay this action under the first-to-file rule.

Defendant also seeks dismissal of the Amended Complaint, pursuant to Rules 12(b)(1), 9(b), and 12(b)(6), because Plaintiff: (1) has no standing to seek injunctive relief; (2) has not pled fraud, as to alleged advertisements, with particularity; (3) fails to state a claim for unjust enrichment; and (4) does not plead sufficient facts to sue for equitable relief in the form of restitution.

1

## II.     PROCEDURAL HISTORY OF RELEVANT ACTIONS

### A.     Procedural History of Jamison Action

On March 1, 2023, the *Jamison Action* was commenced in the United States District Court for the Northern District of California against Defendant and Hornell Brewing Co., Inc. ("Hornell").   (*See* accompanying declaration of Robert P. Donovan, "Donovan Dec.," Exhibit A).  The plaintiff in *Jamison* filed an amended complaint on May 22, 2023.  (*Id.*, Ex. B). In *Jamison*, the plaintiff seeks to represent a nationwide class of persons who purchased Defendant's "fruit snack products," alleged to include "MIXED FRUIT Fruit Snacks." (*Id.*, ¶¶ 1, 60b).  The *Jamison* plaintiff alleges that Defendant's labeling and marketing of the "fruit snack products," as having "NO PRESERVATIVES," is misleading and deceptive because the products contain citric acid, an alleged preservative. (*See id.*, ¶¶ 1, 24, 28).

### B.     Procedural History of the Within Action

On April 26, 2023, Plaintiff commenced the present action.  (ECF No. 1).   On July 21, 2023, Defendant filed a motion to dismiss.  (ECF 13).   In response, Plaintiff filed the Amended Complaint on August 11, 2023.  (ECF 14).  Plaintiff seeks to represent a nationwide class of persons who purchased Defendant's "sour fruit snack products" (at times, the "Fruit Snack Products") within the applicable statute of limitations.  (Am. Compl., ¶¶ 1, 84b).  Plaintiff claims that Defendant's labeling of the Fruit Snack Products as having "NO PRESERVATIVES" is misleading and deceptive because the products contain the following ingredients alleged to be preservatives:  citric acid, ascorbic acid, lactic acid, and fumaric acid.  (*Id.,* ¶¶ 1, 23, 26).

Plaintiff here is represented by the Keeton Firm LLC, by and through Steffan Keeton, Esq.  While not a signatory to the complaint filed in the *Jamison Action*, that same law firm and same attorney are identified on that pleading as one of the attorneys representing the plaintiff in

2

the *Jamison Action* (with an indication that a *pro hac vice* is forthcoming). (Donovan Dec., Ex. B, p. 1 and p. 32). ABUSA is represented by the same attorneys in both actions.

## III.   SUMMARY OF ARGUMENT

The first-to-file rule is designed to bar this type of duplicative and wasteful use of judicial resources, making a dismissal or a stay of the action appropriate. Additionally, dismissal is warranted under Federal Rules of Civil Procedure 12(b)(1), 9(b), and 12(b)(6) because:

(1) Plaintiff lacks Article III standing to seek injunctive relief due to the failure to plead a plausible threat of future imminent harm;

(2) Both counts of the Amended Complaint sound in fraud, yet fail to satisfy the heightened pleading standards of Rule 9(b) with respect to claims about advertising;

(3) Plaintiff fails to state a claim for unjust enrichment as it is duplicative of the claims asserted under the Maryland Consumer Protection Act, MD Code Ann. §§ 13-101, *et seq*. ("MCPA"); and

(4) Plaintiff does not allege that an inadequate remedy at law exists, and therefore cannot seek equitable relief in the form of restitution.

## IV.   LEGAL ARGUMENT

### A.   The First-to-File Rule Warrants Dismissal Or A Stay of Plaintiff's Action

"The first-to-file rule 'requires substantially overlapping cases filed in separate fora to be resolved in the forum where the initial case is filed unless a balance of convenience favors the second action.'" *Fisher v. Rite Aid Corp.*, No. CIV.A.RDB-09-1909, 2010 WL 2332101, at *2 (D. Md. June 8, 2010) (citing *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 (4th Cir.1974)). Under the first-to-file rule, a district court "has discretion to stay, dismiss, or transfer the second-filed action." *Intellor Grp., Inc. v. Cicero*, No. CV TDC-19-0010, 2019 WL 1643549, at *3 (D. Md. Apr. 16, 2019) (transferring late-filed action); *see also*

*Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 665 (D. Md. 2011) (stating that the second-filed case may be "stayed, transferred, or enjoined").

In determining whether to apply the first-to-file rule, most courts consider three non-exhaustive factors: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Intellor Grp., Inc.*, 2019 WL 1643549, at *3 (other citations omitted). Courts in this district recognize that the first-to-file rule serves the significant goals of "ensuring judicial efficiency, consistency, and comity," and, as a result, "'should not be disregarded lightly.'" *Fisher*, 2010 WL 2332101, at *2 (quoting *Neuralstem, Inc. v. Stemcells, Inc.*, 573 F.Supp.2d 888, 900 (D. Md. 2008)).

Dismissal or a stay is appropriate when "a showing of substantial similarity" is made. *Hinton v. Naked Juice Co.,* No. 8:11-CV-03740-AW, 2012 WL 1552873, at *2 (D. Md. Apr. 30, 2012) (citing *Fisher*, 2010 WL 2332101, at *2). "Substantial similarity" does not mean that cases must be identical; "courts need not find a precise overlap." *Id.* at *2; *see also Traylor v. Tropicana Products, Inc.,* 2012 WL 2564817, at *2 (D. Md. 2012) (dismissing duplicative class action lawsuit pursuant to the first-to-file rule). Here, all factors of the first-to-file rule heavily weigh in favor of a dismissal or a stay of Plaintiff's action.

***First****,* there can be no dispute that *Jamison* is the earlier-filed action. In determining chronology of an action, "the first court in which jurisdiction attaches has priority to consider the case" and jurisdiction "relates back to the filing of the complaint." *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018) (cited with approval in *Intellor Grp., Inc.*, 2019 WL 1643549, at *3). The *Jamison Action* was commenced on March 1, 2023 in the United States District Court for the Northern District of California. (Donovan Dec., Ex. A). Plaintiff here filed the initial Complaint on April 26, 2023 – nearly two months later. (*See*

4

ECF 1).  Thus, the first factor, chronology of events, weighs in favor of application of the first-to-file rule.

*Second*, the parties in this action are substantially similar and, in some instances, identical to the parties in the *Jamison Action*.  In this action, Plaintiff sues ABUSA, who is also a defendant in the *Jamison Action*.  (*See generally* Am. Compl. and Donovan Dec., Ex. B).  The fact that the plaintiff in *Jamison* also sues another defendant, Hornell, does not negate the substantial similarity of the parties.  *See, e.g., Youngevity Int'l, Inc. v. Renew Life Formulas, Inc*., 42 F. Supp.3d 1377, 1382 (S.D. Cal.  Aug. 13, 2014) (finding parties substantially similar although four additional defendants were named in second-filed suit but not in first).

As to the identity of the plaintiffs, District Courts within the Fourth Circuit have ruled that, where the plaintiffs in separate cases are members of the same putative classes pled, the plaintiffs are "substantially similar" for purposes of the first-to-file rule.  *See, e.g., Fisher*, 2010 WL 2332101, at \*2; *see also Hinton*, 2012 WL 1552873, at \*2 (noting that parties in separate actions were "virtually identical" because the first-filed actions sought to represent a class of consumers that included plaintiff in the second-filed action); *see also Gonzalez v. Homefix Custom Remodeling*, Corp., No. 1:23-CV-192, 2023 WL 3115585, at \*4-5 (E.D. Va. Apr. 26, 2023) (applying first-to-file rule to late-filed class action because, *inter alia*, "every member of [plaintiff's proposed class] would be included in [the earlier-filed proposed class].").

District Courts within this Circuit have also looked for guidance in decisions from the Ninth Circuit when applying the first-to-file rule.  *See, e.g., Intellor Grp., Inc*., 2019 WL 1643549, at \*3-4; *Hafkey v. Cohen*, No. CV GLR-17-2604, 2018 WL 11472298, at \*2 (D. Md. Aug. 21, 2018).  As to the flexible approach applied with regard to the first-to-file rule, the rationale applied in *Cadenasso v. Metro. Life Ins. Co*., No. 13-CV-05491-JST, 2014 WL

5

1510853, at *10 (N.D. Cal. Apr. 15, 2014) is instructive.  In *Cadenasso*, the court applied the first-to-file transferring the action "[d]espite the geographic dissimilarity between the classes" involved.  *Id.*  Even though both actions concerning putative classes that were mutually exclusive, with the earlier-filed action covering "only Missouri residents" and the other "contain[ing] residents only of the remaining 49 states[,]" the *Cadenasso* court correctly adopted a "flexible approach in evaluating the similarity of the parties[.]"  *Id.*  Noting that the rule "only requires the parties to be 'substantially similar,' rather than identical," the *Cadenasso* court held that the first-to-file rule should apply if "some of the parties" in one matter are the same as the other, "regardless of whether there are additional unmatched parties in one or both matters."  *Id.* (citing *Kerotest Mfg. v. C–O–Two Fire Equip. Co.*, 189 F.2d 31, 34–35 (3d Cir.1951)).

Here, the plaintiffs in both actions are substantially similar given the nationwide class allegations and the fruit snack products at issue.  In both *Jamison* and the present action, plaintiffs seek to represent a nationwide class consisting of "[a]ll persons who purchased Defendant['s] Products within the United States[.]"  (Am. Compl., at ¶ 84(a)-(b); Donovan Dec., Ex. B, at ¶ 60(a)-(b)).  In defining the "Products" that are the subject of the *Jamison Action*, plaintiff there alleges that "[t]he following Arizona products are included in this definition: 'MIXED FRUIT Fruit [sic] Snacks.'"  (*See id.*, ¶¶ 1 fn.1, 4).  Significantly, the "Products" in the *Jamison Action* do not to exclude other fruit snack products that are substantially similar.  (*Id.*) Given that other flavored fruit snack products are not excluded from being within the scope of the class claims alleged in *Jamison,* purchasers of the "sour" fruit snack products at issue here are included within the putative class alleged in *Jamison*.  Applying the first-to-file rule "flexib[ly]," (*Cadenasso*, 2014 WL 1510853, at *10), the parties in both *Jamison* and the present action are "substantially similar" for purposes of the rule.  *See Fisher*, 2010 WL 2332101, at *2.

6

Because of the substantial similarity of the parties in these two actions, the second factor favors application of the first-to-file rule.

***Third,*** in terms of the substantial similarity of issues or claims, in both actions, the plaintiffs claim that the labels on Defendants' fruit snacks are deceptive for the same reason:  the labels state "No Preservatives" notwithstanding the presence of the same ingredient, citric acid, alleged to be a preservative.  (*Compare* Donovan Dec., Ex. B, ¶¶ 1, 24, 28 *with* Am. Compl. ¶¶ 1, 23, 26).  Both plaintiffs allege that Defendant deceptively marketed the same products:  "fruit snack products."  (*See* Am. Compl., at ¶ 1; Donovan Dec., Ex. B, at ¶ 1).  Each of these actions include claims that "the Product prominently states, 'NO PRESERVATIVES' on the front and back" but contains ingredients, including "citric acid," which both plaintiffs allege to be a preservative.  (*C.f.,* Am. Compl., at ¶¶ 4, 22, 26; Donovan Dec. Ex. B, at ¶¶ 4, 28).  Thus, both actions concern the same issue to be decided:  whether Defendant's "fruit snack products" contain "preservatives."

Further, Plaintiff advances legal claims and asserts allegations that are substantially similar and, in some instances, identical to those asserted in the *Jamison Action.*  By way of summary, those allegations include:

| **SMILEY ALLEGATIONS** | **JAMISON ALLEGATIONS** |
|---|---|
| ¶27.  The FDA classifies and identifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like citric acid.  (Footnote referencing FDA website) | ¶29.  Same. [Donovan Dec., Ex. B]. |

09/25/2023 SL1 1950949v1 115260.00014

| | |
|---|---|
| ¶29.  Citric acid's classification as a preservative is further confirmed by a Warning Letter sent by the FDA to the manufacturer of Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites," in which the FDA proclaimed the "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of Section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions.   21 CFR 101.22.  [Footnote referencing letter to Chiquita Brands] | ¶30.  Same.  [*Id.*] |
| ¶30.   Citric acid acts as a preservative in the Product regardless of the subjective purpose or intent for why Defendant added citric acid to the Product, including, as a flavoring agent. | ¶31.  Virtually the same.  [*Id.*]. |
| ¶31.  Even if citric acid can be used as a flavoring agent in the Product, a greater amount of citric acid is needed to act as a flavoring agent than to preserve the Product because citric acid acts as a preservative even if very low levels are contained in the Product.     [Footnote referencing "Antimicrobials in Foods" publication] | ¶32.  Same.  [*Id.*]. |
| ¶32.  The quantity of citric acid therefore needed to affect the flavor of the Product is more than sufficient to function as a preservative. Accordingly, Defendant's purported intent to use citric acid for flavoring has no bearing on the actual function of citric acid as a preservative. | ¶33.   The quantity of citric acid therefore needed to affect the flavor of the Product is more than sufficient to function as a preservative.  [*Id.*]. |
| ¶33.   Citric acid functions as a preservative by serving as an acidulant and as an indirect antioxidant, by infiltrating and then weakening or killing microorganisms through direct antimicrobial effect lowering their pH-level and thereby combatting microorganisms, and through sequestration.  Citric acid serves these functions regardless of whether they are also being used as flavorants.   [Footnote referencing publication, "Principles of Food Chemistry"] | ¶34.  Same.  [*Id.*]. |
| ¶34.  Citric acid still acts as a preservative even if it was intended to be used for another purpose. Food and beverage manufacturers, like Defendant, seek to provide consumers with products that are palatable within a given shelf life.  To help ensure this, manufacturers impose many hurdles to degradation, when formulating a product. | ¶35.  Virtually the same.  [*Id.*]. |

8

| | |
|---|---|
| Therefore, if an ingredient has a preservative effect, like citric acid, it is considered a preservative because it acts as a hurdle to food degradation regardless of whether it was added to the Product for other reasons.   [Footnote referencing publication, "Applied and Environmental Microbiology"] | |

In both actions, plaintiffs also assert that substantially similar common questions exist. (*Compare* Am. Compl., ¶ 87a.-e. *with* Donovan Dec., Ex. B, at ¶ 63a.-g.).  The plaintiffs in both actions seek nationwide class certification based upon the same claim, unjust enrichment. (Compare Am. Compl., ¶¶ 84-88; with Donovan Dec., Ex. B, ¶¶ 139-145).  They also both seek injunctive relief.  (*Id.*, request for relief, p. 30, ¶b; Donovan Dec., Ex. B, relief demanded, p. 31, ¶ b).  Further, any differences in the causes of action asserted, under separate state laws, do not negate the substantial similarity between the two actions. *See Hinton*, 2012 WL 1552873, at *2 (finding separate lawsuits filed in California overlapped with Maryland action); *see also Fisher*, 2010 WL 2332101, at *2-3 (slight difference between state and federal claims did not prevent application of the first-to-file rule).

The fact that Plaintiff in this action brings claims for a different flavor variation of Defendant's fruit snack products, and includes allegations about other preservatives, in addition to citric acid, does not bar the application of the first-to-file rule.  Courts in the Ninth Circuit have "routinely found cases to be substantially similar even when they include different sets of products[.]" *Paracha v. Gen. Mills, Inc.*, No. CV1807659CJCJEMX, 2019 WL 13040495, at *3 (C.D. Cal. Jan. 7, 2019) ("The fact that the two cases involve slightly different sets of products does not preclude application of the first-to-file rule.") (collecting cases).  Thus, the first-to-file rule applies equally to claims involving different variations of products if the "primary thrust" or the "core allegations" of both complaints is the same.  *Id.*  This is also consistent with the Fourth

9

Circuit's application of the first-to-file rule, requiring only "substantial similarity" between the actions, not "precise overlap." *Fisher*, 2010 WL 2332101, at *2.

Here, the "primary thrust" of both Plaintiff's Amended Complaint and the *Jamison Action* is identical:   both actions claim that Defendant's "fruit snack products" "contain preservatives" despite being labeled as "preservative-free." *Id.* (Am. Compl., at ¶¶ 1, 4, 22, 26; Donovan Dec., Ex. B, at ¶¶ 1, 4, 28).   Both actions concern the same type of product, fruit snacks, that are alleged to contain many of the same ingredients, including two ingredients claimed to be a preservative in this action (i.e. citric acid and ascorbic acid).   (*Compare* ingredient statement in this action at Am. Complaint, ¶ 26, p. 9, *with* ingredient statement in *Jamison* at Donovan Dec., Ex. B, ¶ 28).

Because the present action involves the same or substantially similar parties, the same legal and factual issues, substantially similar products, many identical allegations, and substantially the same claims as being asserted in the earlier-filed and ongoing *Jamison Action*, dismissal or stay of this action under the first-to-file rule is warranted.

### B.   By Not Plausibly Alleging Actual or Imminent Future Injury, Plaintiff Lacks Article III Standing to Seek Injunctive Relief

Pursuant to the Federal Rules of Civil Procedure, dismissal should be granted under Rule 12(b)(1) where the moving party shows "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Zander v. United States*, 786 F. Supp. 2d 880, 883 (D. Md. 2011).   This is because "[p]laintiffs bear the burden of proving that subject matter jurisdiction exists" (*Ali v. Hogan*, 496 F. Supp. 3d 917, 922 (D. Md. 2020)), and must prove standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of

evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Under Article III's standing requirement for injunctive relief, a plaintiff must allege that a "real or immediate threat" exists that she will be wronged again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) ("[W]here injunctive relief is sought, the plaintiff must show a real or immediate threat that she will be wronged again.") (internal quotations omitted). The "'threatened injury must be certainly impending to constitute injury in fact,' and . . . 'allegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citations omitted). Put another way, courts in this Circuit have routinely held that "past harm alone is insufficient;" the plaintiff "must make plausible that [s]he will suffer future injury absent the requested injunctive relief." *Metague v. Woodbolt Distribution, LLC*, No. 8:20-CV-02186-PX, 2021 WL 2457153, at *7 (D. Md. June 16, 2021) (collecting cases).

The decision in *Metague v. Woodbolt Distribution, LLC* is directly on point and supports dismissal of the claims for injunctive relief. 2021 WL 2457153. In *Metague*, the court dismissed a putative class action claim for injunctive and declaratory relief where the plaintiff failed to allege a "real and immediate threat of repeated injury" in addition to the allegations of past harm. *Id.* at *7. There, the plaintiff alleged that the product at issue was "not a zero-calorie product as advertised." *Id.* At the same time, the court noted that a "zero-calorie product" is "precisely what [plaintiff] and the class wish to purchase in the future[.]" *Id.*

Plaintiff there alleged that he "and the absent class members desire to purchase products with the *same qualities and attributes* as Defendant *advertised* in the Produce (sic) to have," and that if the product was "*actually manufactured … with the amount of calories advertised*," the

11

class would purchase it again. *Id*. (all emphasis in original). The court found that, by asserting the desire to purchase only a product that contained zero calories, the plaintiff "disavowed any intention of purchasing [the specific product] in its current composition—whether it was properly labeled or not—because it is not a zero-calorie product." *Id*. Therefore, the court was obligated to dismiss the plaintiff's claim for injunctive and declaratory relief. *Id*.

The same circumstance is presented here because Plaintiff also asserts a willingness to "purchase and consume a preservative-free snack" "presently and in the future." (*See* Am. Compl., at ¶ 14(d)). However, Plaintiff alleges that Defendant's fruit snack products are not "preservative-free." (*Id.*, ¶¶ 6, 26, 28, 37, 44, 52 and 57). Under the rationale of *Metague*, the allegations of a willingness to purchase a preservative-free fruit snack are insufficient to state a claim of future imminent harm and Plaintiff lacks standing to obtain injunctive relief.

Plaintiff's assertion that she would "purchase the Products again" if "the Products were no longer deceptively labeled" (Am Compl., ¶ 14(e)) likewise does not state a claim of imminent future harm because that hypothetical purchase would mean that the Fruit Snack Products would no longer have the label or the ingredients claimed actionable. As a matter of common sense, no plausible injury would occur in such a circumstance. These types of allegations do "not save the claim when read in conjunction with the more particularly expressed intentions" to purchase the Products *only* if they were truly preservative-free. *See Metague*, 2021 WL 2457153, at *7 fn. 7. Because Plaintiff fails to assert plausible allegations of "a real and immediate threat of repeated injury," Plaintiff lacks Article III standing to obtain injunctive relief.

C.    <u>**Both Counts in the Amended Complaint Sound in Fraud and Lack the Particularity Required Under Rule 9(b)**</u>

Pursuant to Fed. R. Civ. P. 9(b), dismissal is appropriate where the plaintiff fails to plead fraud with particularity. *U.S. ex rel. Goldstein v. Fabricare Draperies, Inc.*, 84 F. App'x 341,

12

343 (4th Cir. 2004).  Regardless of the specific causes of action pled, courts in the Fourth Circuit will look to whether the "allegation has the substance of fraud[.]"  *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008).  If the cause of action "sound[s] in fraud" it must be "pleaded with the particularity required by Rule 9(b)."  *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 705 (4th Cir. 2018); Fed. R. Civ. P. 9(b). This particularity requirement obligates plaintiffs to offer more than broad, ambiguous allegations of fraudulent conduct – they must "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  U.*S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).  Here, both causes of action in Plaintiff's Amended Complaint "sound in fraud" yet fail to satisfy the particularity requirement of Rule 9(b).  *Just Born II, Inc.,* 888 F.3d at 705.

In addition to labels, Plaintiff claims misrepresentations are present in Defendant's marketing and advertisements.  (*See* Am. Compl., ¶¶ 1, 2, 3, 6, 71, 78, 107, and § H, at pp. 19-21).  For example, Plaintiff pleads that Defendant's alleged "fraud" under the MCPA consists of "continued false and deceptive advertising of the Products[.]"  (*See id.* ¶¶ 71, 99).  Plaintiff's claim for unjust enrichment also alleges that Defendant "deceptively marketed [and] advertised" the Product, resulting in "nongratuitous payments[.]"  (*Id.* ¶¶ 107, 108).

However, Plaintiff does not plead what was stated in these advertisements, when and where these statements appeared, or whether they were even viewed by Plaintiff.  Given that these fraud allegations form the basis for Count I and Count II of the Amended Complaint, but fail to satisfy Rule 9(b)'s pleading requirements, the claims about advertising statements are subject to dismissal. *See Just Born II, Inc.*, 888 F. 3d 696 (dismissing affirmative defense of

unjust enrichment because it "sounded in fraud" and failed to satisfy Rule 9(b)); *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 478 (D. Md. 2022) ("Plaintiffs have failed to satisfy the heightened pleading standard necessary for an allegation of fraud" as the complaint "is devoid of allegations as to the time, place or other circumstances of the allegedly false representation."); *Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 713 (D. Md. 2020) (finding that plaintiff provided only the conclusory assertion that it relied on defendants' misrepresentation without alleging hearing or seeing any of the specific misstatements).

### D.     **Plaintiff Fails to State Claims Upon Which Relief May be Granted**

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]" *Iqbal*, 556 U.S. at 678. Moreover, the Court need not accept "legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano* v. *Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted). Ultimately, in evaluating whether a plaintiff has stated a claim, the Court should draw upon both "its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

09/25/2023 SL1 1950949v1 115260.00014

### (i) *Plaintiff Fails To State A Claim For Unjust Enrichment Because It Is Duplicative Of The MCPA Claim.*

Generally, when a claim for unjust enrichment is duplicative of other claims, it is subject to dismissal on those grounds. *See Victor Stanley, Inc. v. Creative Pipe, Inc.,* MJG-06-2662, 2007 WL 9896432, at *4 (D. Md. April 30, 2007) (dismissing unjust enrichment claim finding that "[p]laintiff has not pleaded a claim that is not duplicative of other claims and/or preempted."); *C.f. Hartjen v. Cross Medical Products, Inc.,* MJG-06-2938, 2007 WL 9780544, at * 2 (D. Md. April 30, 2007) (denying motion to dismiss quantum meruit claim because it was independent of the unjust enrichment claim but noting that "Plaintiff is not entitled to duplicative recovery on his quantum meruit and unjust enrichment claims.").

In the unjust enrichment claim at count two, Plaintiff alleges that "Defendant deceptively marketed, advertised and sold merchandise to Plaintiff and the Classes." (Am. Compl., ¶ 107). Plaintiff also asserts conferring a benefit upon Defendant for a product that was not the "value that had been represented by Defendant[.]" (*Id.*, ¶ 108). These same factual allegations form the basis for the claim under the MCPA. (*Id.*, ¶¶ 99-102). The unjust enrichment claim is duplicative of the MCPA claim because it is based upon the same alleged conduct: deceptive labels. Because no independent factual grounds are pled for unjust enrichment, that claim ought to be dismissed as being duplicative of the MCPA claim.

### (ii) *Plaintiff Fails To State A Claim For Equitable Relief, In The Form Of Restitution, Because Plaintiff Does Not Allege That An Inadequate Remedy At Law Exists*

In order to obtain equitable remedy in the form of restitution, the claimant must demonstrate a lack of adequate legal remedy. *See State v. Philip Morris Inc.*, No. 96122017, 1997 WL 540913, at *15 (Md. Cir. Ct. May 21, 1997). The "fundamental purpose of equitable jurisdiction" is "to grant relief when, *and only when*, the law courts could not, or would not,

15

render a complete and adequate remedy for the wrong done." *See CMH Manufacturing v. Neil*, No. CV JKB-21-0674, 2021 WL 4290634, at *3 (D. Md. Sept. 21, 2021) (quoting *Manning v. Potomac Elec. Power Co.*, 187 A.2d 468, 472 (Md. 1963)) (emphasis in original).

Plaintiff is suing for violations of the MCPA, seeking damages, and sues for "compensatory and punitive damages … arising from Defendant's wrongful conduct[.]" (Compl., ¶¶ 103, 104 and at Prayer for Relief ¶(e)). Plaintiff also seeks equitable relief, in the form of restitution, as part of the claim for unjust enrichment. (*Id.*, ¶ 109 and Prayer for Relief, ¶(c)). All of Plaintiff's claims are based upon the same alleged conduct (*Id.*, ¶¶ 75-88) in that Plaintiff alleges financial harm and/or losing money as a result of Defendant's conduct. (*Id.*, ¶¶ 77, 79, 83, 91, and 102).

However, Plaintiff fails to allege that equitable relief, in the form of restitution, is necessary due to the lack of an adequate remedy at law. This material deficiency in pleading facts sufficient to state a claim for equitable relief, authorizes dismissal of the restitution claim.

## V.   **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant Defendant's motion to dismiss the Amended Complaint and/or to stay this action.

Respectfully submitted,

Dated: September 25, 2023

By: */s/ Charles E. Leasure III*
CHARLES E. LEASURE III
CHRISTOPHER A. MCDONALD
(admitted *Pro Hac Vice*)

16

STEVENS & LEE
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102
T:  215-751-2885
F:  610-988-0805
charles.leasure@stevenslee.com
christopher.mcdonald@stevenslee.com

ROBERT P. DONOVAN
(admitted *Pro Hac Vice*)
STEVENS & LEE
669 River Drive, Suite 201
Elmwood Park, New Jersey 07407
Telephone:  (201) 857-6778
Facsimile:  (201) 857-6761
robert.donovan@stevenslee.com

*Attorneys for Defendant,*
*Arizona Beverages USA, LLC*